IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LISA RYAN MURPHY,
ADC #760343                                                                                      PLAINTIFF

V.                                      1:19CV00105-JTK

TONI BRADLEY, et al.                                                                             DEFENDANTS

**MEMORANDUM AND ORDER**

Plaintiff Lisa Murphy is a state inmate incarcerated at the McPherson Unit of the Arkansas Department of Correction (ADC). She filed this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to her serious medical needs by numerous Defendants. (Doc. Nos. 6, 7) Defendants Bradley, Hearington, Payne, Griffin, Laryea, Payte, Lewis and Swift were dismissed on December 13, 2019 (Doc. No. 16), and Defendants Baker, Kizer and Fields were dismissed on January 22, 2020 (Doc. No. 27). On May 6, 2020, Plaintiff's claims against Defendants Hughes and Hutchinson were limited based on her failure to exhaust administrative remedies, and Defendants Stieve, Baiza, Williams, and Gardner were dismissed. (Doc. No. 44)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts filed by remaining Defendants Dr. Joseph Hughes and Advance Practice Registered Nurse (APRN) Betty Hutchinson (Doc. Nos. 58-60), to which Plaintiff responded. (Doc. No. 64)

**I.     Facts**

In her Amended Complaint and Addendum, Plaintiff alleged Defendants acted with deliberate indifference to her need for treatment of serious colorectal issues, including denial of adequate pain medications. (Doc. Nos. 6-7) In the May 6, 2020 Order, Plaintiff's claims against

1

Defendants Hughes and Hutchinson were limited to the following:

- Hughes' encounter with Plaintiff on September 7, 2018 relating to pain medication;

- Hughes' encounter with Plaintiff on October 8, 2018, regarding post-surgery follow-up;

- Hughes' and Hutchinson's treatment of Plaintiff between October 13, 2018 and November 15, 2018, regarding post-surgery pain medication and alleged failure to order medications as recommended by her surgeon;

- Hughes' and Hutchinson's treatment of Plaintiff relating to EGD and colonoscopy referrals between March 20, 2019 and June 17, 2019;

- Hughes' and Hutchinson's treatment of Plaintiff for nausea and vomiting on April 11, 2019 and April 13, 2019; and

- Hughes' treatment of Plaintiff on June 25, 2019 regarding the EGD biopsy results and rescheduling a colonoscopy consult.

## II.     Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other

2

citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Defendants' Motion

Defendants ask the Court to dismiss Plaintiff's claims against them based on the medical records (Doc. No. 60-2) which show that they treated her for her complaints and did not act with deliberate indifference to her serious medical needs. They state that Plaintiff disagreed with their medical decisions, which does not support a claim for relief, and that mere speculation is insufficient to support her claims against them. Finally, Defendants also present the Declaration of Dr. Nannette Vowell, an internal medicine physician who provides medical services to ADC inmates in the Special Needs Unit of the Ouachita River Unit. (Doc. No. 60-3) Dr. Vowell reviewed Plaintiff's medical records and concluded that both Defendants provided Plaintiff with appropriate treatment for her gastrointestinal conditions during the time periods in 2018 and 2019 which are set forth above. Her summary of Defendants' treatment, as derived from the medical records, is as follows.

### 1) Hughes' encounter on September 7, 2018 relating to pain medication.

In April 2018, Dr. Laryea, a specialist at UAMS, diagnosed Plaintiff with rectal prolapse and recommended surgery to repair the problem. (Doc. No. 60-3, p. 2) The surgical repair was performed on June 22, 2018, and Plaintiff returned for a post-operative follow-up on July 12, 2018.

3

(Id.) Dr. Laryea assessed that Plaintiff's incisions were well-healed, that her abdomen was soft and nontender, and he prescribed MiraLAX if needed for constipation. (Id.) Plaintiff saw Dr. Hughes on September 7, 2018 with a complaint that her rectum was "coming down." (Id.) He found that when Plaintiff would bear down, about 1/2 cm of mucosa protruded, but then spontaneously returned to normal. (Id.) He prescribed sitz baths and Tylenol and denied Plaintiff's request for a narcotic because such could produce constipation and worsen her situation. (Id.) He noted she had a consult pending with the surgeon, and checked with the scheduler to try and move up the appointment. (Id.)

### 2) Hughes' encounter on October 8, 2018, regarding post-surgery follow-up.

A general surgeon, Dr. Pate, saw Plaintiff on September 19, 2018, and noted that her rectum was totally retracted and that the surgeon did a great job. (Id., p. 3) He recommended hydrocortisone cream and a fiber supplement, and Fiber-Lax Tabs were prescribed. (Id.) Plaintiff then refused a follow-up appointment scheduled with Dr. Hughes to discuss her evaluation by Dr. Pate, on September 21, 2018. (Id.) Plaintiff did see Hughes on October 8, 2018 for a follow-up of her rectal surgery, and Hughes found a small area of irritation which could cause Plaintiff's reported bleeding. (Id.) He ordered lab work and instructed that an appointment with Dr. Laryea be moved up.

### 3) Hughes' and Hutchinson's treatment between October 13, 2018, and November 15, 2018, regarding post-surgery pain medication and alleged failure to order medications.

Plaintiff saw Hutchinson on October 22, 2018 with a complaint of bleeding and pain from her rectum, including "a long piece of black colon" which she said was rotten, dead, and falling

4

out. (Id.) Hutchinson noted a small amount of soft pink tissue which protruded from Plaintiff's rectum when she bore down, and evidence of a small blood clot at the opening. (Id.) She also noted that she prescribed Plaintiff with Tylenol #3, rather than the specific pain medication Plaintiff requested. (Id.) The following morning she noted to call Dr. Laryea and then ordered an abdominal x-ray. (Id.) When Plaintiff appeared at the clinic the following day, the treating nurse spoke with Hutchinson, who advised that Plaintiff was receiving proper treatment for her colon and was scheduled to see a surgeon. (Id.) She also directed the nurse to give Plaintiff a Maalox stat. (Id.)

Plaintiff requested a renewal of Zantac, Excedrin, and Bentyl medications on October 23, 2018, and the Excedrin was renewed on October 28, 2018. (Id., p. 4) She saw Hutchinson on October 30, 2018, and denied constipation or diarrhea, and Hutchinson noted that the prior week's x-ray was negative for free air, obstruction, or constipation. (Id.) Hutchinson also noted Plaintiff's complaint of left side pain with palpation, no distention, and no palpable mass, and witnessed a small amount of dark blood at the opening of the rectum and about 1 cm of the rectum protruding with bearing down. (Id.) Upon a digital exam, the rectal tone was noted as good, with no palpable mass. (Id.) When Plaintiff again requested Excedrin and Bentyl, Hutchinson noted that Plaintiff was scheduled for a G.I. appointment the next week, could not take Zofran (anti-nausea), and had just finished a round of antibiotics. (Id.) Hutchinson then prescribed Zantac to treat heartburn, ulcers, and Gastroesophageal reflux disease (GERD). (Id.)

Plaintiff reported to the infirmary on October 31, 2018 with a report of vomiting blood; a sample of the vomitus was tested and found to be negative for blood. (Id.) Dr. Laryea saw Plaintiff on November 1, 2018 for a complaint of rectal bleeding, prolapse, and falling off. (Id.) He noted blood stains in the perennial area upon bearing down, minimal prolapse of tissue with good

sphincter tone, and no palpable masses. (Id.) A rigid proctoscopy test showed streaks of blood but no source of bleeding and an anoscopy showed non-bleeding hemorrhoids. (Id.) Dr. Laryea recommended a colonoscopy to evaluate the source of bleeding and noted a normal hemoglobin, hematocrit, and white blood cell count. (Id., pp. 4-5)

Hughes saw Plaintiff on November 2, 2018, after her return from the surgeon and discussed the plan for the colonoscopy. (Id. ) He prescribed Tylenol #3 for pain and mag-AL for nausea, and noted that he could not prescribe Zofran for nausea while she took Effexor. (Id., p. 5) That night, Plaintiff complained of chest pain and vomiting, but refused Hughes' verbal order for a Vistaril injection for the nausea. (Id.) Hughes noted that the colonoscopy was scheduled for November 19, 2018, and on November 3, Hughes prescribed Hydroxyzine for anxiety, nausea, and vomiting. (Id.)

Hughes saw Plaintiff at sick call on November 12, 2018, for a complaint of rectal pain. (Id.) He examined her, noted no distention, good bowel sounds, some tenderness on palpation, but no response of pain when pressing down. (Id.) He also noted an area of mucosa which appeared to be bleeding and told her to follow up after her colonoscopy. (Id.) He prescribed Vistaril by mouth to help with nausea and vomiting and continued the Tylenol #3 prescription for pain. (Id.) He performed a record review on November 15, 2018, and noted that the colonoscopy was scheduled for November 19, 2018, and should not be changed or cancelled without Dr. Laryea's consent, since it was necessary to know how to care for Plaintiff's gastrointestinal tract. (Id., pp. 5-6)

Dr. Laryea performed the colonoscopy on November 19, 2018, and noted that it was normal, no bleeding source was identified, and no reoccurrence of the rectal prolapse. (Id., p. 6) He recommended a colonoscopy in ten years and a high-fiber diet. (Id.)

6

**4) Hughes' and Hutchinson's treatment of Plaintiff re: EGD and colonoscopy referrals from March 20, 2019 – June 17, 2019.**

Hughes saw Plaintiff for follow-up relating to a spinal x-ray on March 20, 2019, and she complained of chronic vomiting after eating. (Id.) He prepared a consultation request for her to receive an evaluation for an EGD (a scope of the esophagus, stomach, and beginning of the small intestine). (Id., pp. 6-7) He saw her again on April 11, 2019 and prescribed a nausea medication for two days, noting that the EGD consult was pending with Dr. Lambert. (Id., p. 7) He also instructed that Dr. Pate see her the next day for the EGD consult and possibly to perform the colonoscopy evaluation, but Pate would not agree to see Plaintiff due to a pending lawsuit. (Id.) On April 13, 2019, Plaintiff complained of vomiting, and Hughes gave a verbal order for a stat injection of Phenergan. (Id.) He saw her again on April 17, 2019 for stomach complaints and noted no distention, good bowel sounds, no masses or abnormal enlargement or pinpoint tenderness. (Id.) He ordered labs and noted a pending consultation. (Id.)

Plaintiff complained on April 24, 2019 of stomach pain and Hutchinson gave a voice order for sucralfate (to treat or prevent ulcers) and to discontinue the pain reliever. (Id.) Hughes prescribed Acetaminophen and pain reliever plus on May 1, 2019 for other conditions. (Id., pp. 7-8) Dr. Lambert, a general surgeon, evaluated Plaintiff on May 30, 2019 and recommended an endoscopy. (Id., p. 8) Hughes saw Plaintiff on June 6, 2019 for complaints of left quadrant pain and ordered a CBC and noted a pending colonoscopy consult. (Id.) The next day he entered a consultation request for the EGD recommended by Dr. Lambert, and noted that both the EGD and a colonoscopy should be performed on the same day. (Id.)

**5) Hughes' and Hutchinson's treatment of Plaintiff for nausea and vomiting**

7

**on April 11, 2019, and April 13, 2019.**

Vowell found no reference in Plaintiff's medical records regarding treatment by Hutchinson for Plaintiff's nausea and vomiting April 11-13, 2019. (Id.) Hughes saw her on April 11, 2019, and prescribed an appropriate medication and then ordered an injection of Phenergan on April 13, 2019. (Id.)

**6) Hughes' treatment of Plaintiff on June 25, 2019 regarding the EGD biopsy results and rescheduling a colonoscopy consult.**

Plaintiff underwent the endoscopy on June 24, 2019, and Dr. Lambert found a normal esophagus, moderate chronic diffuse gastritis and duodenitis. (Id.) The biopsy results revealed mild chronic gastritis and were negative for H. Pylori. (Id.) Vowell found no record that the colonoscopy was performed that day. (Id. ) Hughes followed up with Plaintiff to review the results and noted that the colonoscopy could not be performed because Plaintiff was not sufficiently prepped, but that it would be rescheduled. (Id.) Hughes noted in the consult request that Plaintiff had normal blood lab work and no diverticulitis, and the Regional Medical Director found no medical necessity for the colonoscopy and gave alternative treatment recommendations. (Id.)

    **B.**    **Plaintiff's Response**

Plaintiff claims that her June 2018 rectal repair surgery failed and that between the time of surgery and the date of her post-op appointment in July 2018, she wrote many complaints on Hughes and Hutchinson for failing to provide her with proper medical care. She bled heavily and her colon hung outside her body. When she tried to explain this at her post-op appointment with Dr. Laryea, he said she was lying and that Hutchinson told him there was nothing wrong with Plaintiff except that she sought drugs. When Plaintiff returned to the ADC she persisted in her

complaints until Hughes examined her and agreed that she should be seen by an outside doctor. She saw Dr. Pate, who stated that Laryea did a good job, but then he refused to treat her because she had filed lawsuits against him. She admitted that Dr. Hughes filed consults for colonoscopies in March and May 2019, but that they were cancelled by Dr. Stieve, the medical administrator. Plaintiff claims Hughes and Hutchinson should have reported Stieve to a higher official, knowing that he blocked her needed procedure. Plaintiff also disagreed with Hughes' decision to prescribe a different anti-depressant, which did not help her pain, and complained that Hughes restricted the amount of Excedrin she could take per month.

C. Analysis

To support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a

constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

The medical records show that Plaintiff was continuously treated by Defendants and others for her colorectal and numerous other medical issues. Plaintiff provides absolutely no evidence that Defendants acted with deliberate indifference to her serious medical needs or denied her treatment or medication. Plaintiff's complaint concerns a disagreement with the Defendants' actions and medical decisions (mainly the denial of requested pain relievers), and she provides no evidence that those decisions were more than negligent. As noted above, a mere disagreement with a treatment decision does not rise to the level of a constitutional violation. Estate of Rosenberg v. Crandell, 56 F.3d at 37. Therefore, absent any additional evidence to show that Defendants acted with deliberate and reckless disregard for Plaintiff's health and safety, the Court finds as a matter of law that Plaintiff fails to support an Eighth Amendment claim for relief.

### III.   Conclusion

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 58) is GRANTED.

2. Plaintiff's Complaint is DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 4th day of March, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE